R. T. LEWIS v. L. A. CARR, E. C. GUY, and C. B. BAIRD.

(Filed 3 December, 1919.)

1. **Libel and Slander—Slander—Publication—Evidence—Education—Conversion—Actions.**

     The defendant, owner and publisher of a newspaper, published an article charging therein that the plaintiff, county chairman of the board of education, had no right to pay out of the county school fund his expenses to the State Teachers' Assembly, and, upon plaintiff's request to publish his proofs, he printed affidavits of his codefendants, officers of the bank, of deposit of such funds, that the bank had paid vouchers to the plaintiff stating on their face they were for the said purpose. Upon the trial for slander it was shown that no such vouchers had ever been issued. *Held,* the exhibition of the affidavit to the notary before whom it was sworn, and to the owner of the newspaper that published it, was a publication by the defendants, officers of the bank, and giving it to the publishers was evidence of the purpose and intent to circulate it, which, in effect, charged the conversion of the county's funds to the plaintiff's own use in violation of law, and thereupon an action for slander against them will lie.

2. **Libel and Slander—Slander—Qualified Privilege—Malice—Presumptions —Evidence.**

     Publishing, or causing to be published, affidavits which in effect charges a public officer with appropriating public funds for his own expenses contrary to law, is qualifiedly privileged, and raises the presumption that the publication was *bona fide;* and though the falsity of the charge would not of itself prove malice, there is evidence thereof sufficient to go to the jury where the defendants were in a position to know at the time that the charge was false, by their connection or presumed knowledge, or where such knowledge was readily accessible to them.

3. **Libel and Slander—Slander—Education—Misappropriation of Funds— Embezzlement—Statutes.**

   Under the provisions of Rev., 4141, the chairman of the county board of education is not required to attend the State association of county superintendents, their only allowance being two dollars per day and mileage, Rev., 2786, and a published charge that he had attended the State association and had taken his expenses thereof from the county funds is a charge of a breach of official duty, misconduct, and conversion of the public funds, and, semble, of embezzlement.

4. **Libel and Slander—Slander—Publication—Common Purpose—Parties— Misjoinder—Statutes.**

   Where two persons make an affidavit of a libelous character which is published according to their common purpose, in a newspaper, by a third, all three unite in the libelous words, and may be sued in the same action for the libel, and it may not be dismissed for misjoinder. In this case no objection for misjoinder was taken either by answer or demurrer, and under Rev., 474 (5), 476, 478, a motion to separate, and not to dismiss, is required.

APPEAL by plaintiff from a judgment of nonsuit by *Webb, J.,* at April Term, 1919, of AVERY.

This was an action for libel, brought by the plaintiff, chairman of the board of education of Avery County, against the defendant Carr, owner and publisher of the "Mountaineer and Avery Herald," a newspaper published in Avery County, and the defendants, Guy and Baird, who were the cashier and assistant cashier of the Avery County Bank. At the conclusion of the plaintiff's evidence the court granted a motion for nonsuit, from which the plaintiff appealed.

*F. A. Linney, W. C. Newland, R. W. Wall, and S. J. Ervin for plaintiff.*
*L. D. Lowe for defendant Carr.*
*Councill & Yount and Harrison Baird for defendant Baird.*

CLARK, C. J. The defendant Carr, owner and publisher of "The Mountaineer and Avery Herald," at Newland, N. C., published an article therein which charged that the county superintendent of education had no right to pay out of the county school funds the expenses of the chairman of the county board of education to the teachers' assembly at Charlotte. The plaintiff, who was chairman of the county board of education, called upon the defendant Carr to publish his proofs, and he thereupon printed an affidavit by the defendants Guy and Baird, cashier and assistant cashier of the Avery County Bank, sworn to before a notary public, that the bank had paid a voucher to the plaintiff signed by him as chairman of the board of education and by the superintendent of public instruction of the county, which voucher stated on its face that it was

to pay the expenses of the plaintiff for the trip to the educational meeting at Charlotte in November, 1917.

At the trial the plaintiff offered evidence of the publication of the affidavit in the paper; that no such voucher had ever been issued or authorized to be issued, or had been paid by the bank, and also put in evidence the monthly statements of the bank, with the accompanying vouchers issued by the county board of education, and paid by the bank, and stubs of all vouchers issued by the board, which showed no such voucher.

The exhibition of the affidavit to the notary public and to Carr was a publication by the defendants Guy and Baird, *Logan v. Hodges,* 146 N. C., 38; *Brown v. Lumber Co.,* 167 N. C., 13, and the preparation and handing the article to Carr to be printed in the paper was evidence of the purpose and intent that it should be circulated. The article and affidavit in effect charged the defendant with the conversion to his own use of the funds of the county without authority of law. If this was not a direct charge of embezzlement it was at least an allegation of a gross breach of official duty, misconduct, ignorance and incompetence of the plaintiff as chairman of the board of education of Avery, in issuing and signing a voucher payable to his own order out of the public school funds of the county, collecting the voucher and converting the funds to his own use in violation of law. *Osborne v. Leach,* 135 N. C., 630.

The publication was not absolutely privileged, for it was not in the performance of public service, in which case, notwithstanding proof of the falsity of the charge, and actual malice, an action cannot be maintained thereon. It was qualifiedly privileged, because, though the defendant was under no legal obligation to act, it was a publication required by the public good if the charge were true. In cases of qualified privilege the falsehood of the charge will not of itself be sufficient to establish malice, for there is a presumption that the publication was made *bona fide. Fields v. Bynum,* 156 N. C., 416; *Gattis v. Kilgo,* 140 N. C., 106; *Ramsey v. Cheek,* 109 N. C., 270.

But in cases of qualified privilege, though the falsity of the charge (taking the evidence for the plaintiff to be true, as we must on a nonsuit) would not of itself prove malice, there was evidence sufficient to go to the jury of malice from the fact that the defendants Guy and Baird had paid these vouchers, and they knew, or should have known, that the charge was false. The school vouchers were public records, and all three defendants could have ascertained the falsity of the charge by the means of information in their power. They published an affidavit in regard to the discharge of his duty by a public officer, which was tantamount to the charge of embezzlement. *Osborne v. Leach,* 135 N. C., 630. Rev., 4141, provides that the county superintendent shall attend the

annual meetings of the State association of county superintendents, and that the county board of education of his county shall pay out of the county school funds his traveling expenses and board. As to the county board of education, they are not required to attend, and their only allowance is $2 per day and mileage. Rev., 2786. If the charge was not one of embezzlement, it was a charge of a breach of official duty, misconduct, and conversion of public funds. *Osborne v. Leach, supra; Ivie v. King,* 167 N. C., 177. Whether embezzlement was intended to be charged was a question for the jury. *Beck v. Bank,* 161 N. C., 203.

The defendants rely upon *Rice v. McAdams,* 149 N. C., 29, where two parties were charged jointly with uttering different slanderous words. Here all three united in the same libelous words, two preparing the affidavit and handing it to the third for publication. There was no objection for misjoinder taken either by answer or demurrer. Rev., 474 (5); Rev., 476, 478. In that case there was no common purpose or design shown, and the Court said the action should have been divided, but that it would be error to dismiss it. In this case there was common purpose and action, and no ground to divide the action or dismiss it.

The judgment of nonsuit must be